# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WHITESELL CORPORATION,

       Plaintiff,                  :        Case No. 3:07-cv-099

                                       District Judge Thomas M. Rose
   -vs-                                 Chief Magistrate Judge Michael R. Merz

                                :

BAMAL FASTENER LLC, et al.,

       Defendants.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendants' Motion to Dismiss (Doc. No. 16) which Plaintiff has opposed (Doc. No. 19) and in support of which Defendants have filed a Reply (Doc. No. 20). A motion to dismiss involuntarily is a dispositive motion on which magistrate judge authority is limited to recommending a disposition. 28 U.S.C. §636(b); Fed. R. Civ. P. 72.

## Applicable Legal Standards

The Motion to Dismiss was made under Fed. R. Civ. P. 12(b)(6) whose purpose is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007), citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").
>
> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Hawai 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase"). *Bell Atlantic*, 127 S. Ct. at 1966.

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)(Specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")  See also  *Neitzke v. Williams,* 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989);  *Hishon v. King & Spalding*, 467 U.S. 69, 104 S. Ct. 229, 81 L. Ed. 2d 59(1984); *Monette v. Electronic Data Systems, Inc.,* 90 F.3d 1173, 1189 (6th Cir. 1996).

For purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857 (6th Cir. 1976); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988); *followed Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236 (6th Cir, 1990); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences*."* *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). Bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Sogevalor S.A. v. Penn Central Corp*., 771 F. Supp. 890, 893 (S.D. Ohio 1991). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id.,* citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see also Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1357 at 311-318 (1990). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Trombley*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 (2007), *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

Although both parties rely on documents outside the pleadings, each asserts that the Court may properly decide the instant Motion as a motion to dismiss without converting it to a motion for summary judgment. (See Bamal's Motion, Doc. No. 16, at 3, n.2, citing *Greenberg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); Whitesell's Reply Brief, Doc. No. 19, at 3, n.5,

citing *Wharton v. Duke Realty, LLP*, 467 F. Supp. 2d 381, 386 (S.D.N.Y. 2006), and *Greenberg, supra.*)

This Court's jurisdiction of the subject matter of this case is provided by 28 U.S.C. §1332 in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000. The pled claims for relief sound in tort under Ohio law. Under those circumstances, Ohio substantive law provides the rules of decision. 28 U.S.C. §1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938), overruling *Swift v. Tyson*, 41 U.S. 1, 10 L. Ed. 865 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States.). In applying state law, the Sixth Circuit follows the law of the State as announced by that State's supreme court. *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 758 (6th Cir. 1992); *Miles v. Kohli & Kaliher Assocs.,* 917 F.2d 235, 241 (6th Cir. 1990). "Where the state supreme court has not spoken, our task is to discern, from all available sources, how that court would respond if confronted with the issue." *Id.; In re Akron-Cleveland Auto Rental, Inc.,* 921 F.2d 659, 662 (6th Cir. 1990); *Bailey v. V & O Press Co.*, 770 F.2d 601 (6th Cir. 1985); *Angelotta v. American Broadcasting Corp.,* 820 F.2d 806 (1987). The available data to be considered if the highest court has not spoken include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other States. *Bailey*, 770 F.2d at 604. "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir.1989); *accord Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 617 (6th Cir.1998). This rule applies regardless of whether the appellate court decision is published or unpublished. *See Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 328 (6th Cir.2000); *Puckett,* 889 F.2d at 1485. *Ziegler v. IBP*

*Hog Market*, 249 F.3d 509, 517 (6th Cir. 2001).

## The Complaint

In the Complaint, Plaintiff Whitesell alleges it "manufactures and distributes a wide variety of engineered cold/headed threaded fasteners and parts, wireforms and specialty cold formed parts as well as a full line of class C items (collectively, "Parts," as listed in the Supply Agreement between Whitesell and EHP) to customers such as Electrolux Home Products, Inc., Husqvarna Outdoor Products, Inc., and Husqvarna AB (collectively "EHP")." (Complaint, Doc. No. 1, ¶ 2).

Whitesell alleges that in December, 2000, it entered into a long-term exclusive supply agreement with EHP (the "Supply Agreement"). *Id*., ¶ 6. Under the Supply Agreement, EHP is required to purchase all of its requirements for certain Parts from Whitesell. If Whitesell submits cost-justified the price increases for Parts subject to the Supply Agreement, EHP may obtain competitive quotations for those parts from other suppliers. However, under section 5.5 of the Supply Agreement, competitive quotations must be made in good faith and must be obtained from an equally qualified supplier, which must possess, among other things, manufacturing, engineering, and financial capabilities equal to or greater than those of Whitesell. *Id*. at ¶¶ 6, 8, 9, 10.

Whitesell alleges that Defendants (collectively "Bamal") know of the terms of its Supply Agreement with EHP. Whitesell further alleges that "on March 7, 2003, Bamal submitted illegitimate quotes to EHP for use by EHP to gain leverage over Whitesell. The illegitimate quotes caused Whitesell to enter into agreements with EHP which required Whitesell to provide undue concessions to EHP, thereby causing Whitesell significant monetary injury." *Id*. at ¶¶ 7, 11.

Whitesell asserts that a world wide steel crisis in February and March, 2005, "raised the cost of steel used to manufacture many of the Parts sold by Whitesell to EHP" and "[a]s a result,

Whitesell submitted cost-justified price increases on particular Parts that it supplies to EHP." *Id.* at ¶ 12. However, "EHP refused to agree [to] pay most of the price increases, and claimed it could purchase the parts more cheaply from Bamal as an allegedly equally qualified supplier." EHP demanded that Whitesell reduced its prices to match Bamal's quotations as provided in the Supply Agreement. *Id.* at ¶ 13.

Whitesell and EHP are engaged in litigation in the United States District Court for the Southern District of Georgia over the Supply Agreement. As part of that litigation, EHP submitted to the Georgia court an affidavit executed by defendant Brown, which avers in part that Bamal Fasteners, LLC is ready, able and willing to sell parts listed in attached price quotations to EHP at the prices contained in those quotations and that Bamal Fastener LLC has extensive experience in manufacturing. *Id.* at ¶¶ 14-15.

Whitesell alleges that the price quotations and the Brown affidavit contained numerous misrepresentations in that Bamal is not a manufacturer, the prices quoted by Bamal would require it to sell parts to EHP at a loss, Bamal quoted prices for Parts for which Whitesell had not submitted price increases, and Bamal had no cost information about the parts it proposed to sell. *Id.* at 16.

Whitesell concludes that these facts constitute the torts of interference with its Supply Agreement with EHP, interference with its business relationship with EHP, and fraud. *Id.* at ¶¶ 18-38.

## Defendants' Claim of Absolute Privilege

The first basis on which Defendants seek dismissal is their claim that their "provision of affidavits and deposition testimony and communication of price quotes" was absolutely privileged. (Motion, Doc. No. 16, at 4).

6

It is certainly the law in Ohio that

> As a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a **defamatory statement** was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears.

Syllabus, *Surace v. Wuliger*, 25 Ohio St. 3d 229 (1986)(emphasis supplied). The question of whether the absolute privilege applies in a particular case is a question of law for the court. *Kondrat v. Weston, Hurd, Fallon, Paisely & Howley*, 1986 Ohio App. LEXIS 8167 (Ohio App. 11th Dist. 1986)(Brogan, J.), *citing Mauk v. Brundage,* 68 Ohio St. 89 (1903).[1]

However, the privilege in question protects a speaker or writer from liability in defamation for statements made in judicial proceedings, but not from liability on other theories. To give just two examples, a litigant who calls a judge "Fascist Pig" in open court is not liable for slander, but, if the epithet disrupts the proceedings, may be liable in criminal contempt. Or suppose a witness says from the witness stand "I saw the prosecutor pick up a prostitute last night." While no defamation liability would attach because of the absolute privilege, the witness could be prosecuted for perjury if the statement were a lie and material to the proceedings. To put the matter in another way, the absolute privilege for defamatory statements in judicial proceedings is a defense to a defamation claim, but not to other claims based on the statements.

Defendants rely on *A&B-Abell Elevator Co. v. Columbus/Central Ohio Building & Construction Trades Council*, 73 Ohio St. 3d 1 (1995). In that case, the Ohio Supreme Court recognized a qualified privilege for otherwise defamatory statements made outside of judicial proceedings; the tortious interference claims in that case were characterized by the court as

---

[1] The Court notes that Defendants have attached copies of cited but unpublished opinions to their memoranda on this Motion. Because of the ready availability of electronic copies of case law, S. D. Ohio Civ. R. 7.2(b)(4) has been revised to eliminate the requirement of attaching such copies unless requested.

7

derivative from the defamation claim. *Id*. at 16.

Of course, even if the Brown Affidavit and testimony[2] were cloaked with absolute immunity under the judicial statements rule, the immunity would not apply to any price quotations given directly by Defendants to EHP.

In sum, the doctrine of absolute privilege from defamation liability for statements made in the course of judicial proceedings is irrelevant to the instant case, where no claim for defamation is made.

### Defendants' Claim of Qualified Privilege

In Counts I and II, Whitesell has sued Bamal for tortious interference with contract and with a business relationship. In authority cited by Bamal, the Ohio Supreme Court has defined those torts as follows:

> The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. See *Juhasz v. Quik Shops, Inc*. (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238; *Reichman v. Drake* (1951), 89 Ohio App. 222, 226, 45 O.O. 444, 446, 100 N.E.2d 533, 536; *McDonough v. Kellogg* (D.C.Va.1969), 295 F. Supp. 594, 598. See, also, *Walter v. Murphy* (1988), 61 Ohio App.3d 553, 573 N.E.2d 678, jurisdiction denied (1989), 41 Ohio St.3d 729, 536 N.E.2d 384, modifying *Juhasz*.

*A & B-Abell Elevator Co., supra,* 73 Ohio St. 3d at 14.

More recently, the Ohio Supreme Court adopted § 767 of Restatement of the Law 2d Torts (1979), holding:

---

[2]Defendants refer to the relevant testimony as "deposition testimony" (Motion, Doc. No. 16, at 4). Actually the referenced testimony was given by Mr. Brown in open court.

> 1. The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. (*Kenty v. Transamerica Premium Ins. Co.* [1995], 72 Ohio St. 3d 415, 650 N.E.2d 863, paragraph two of the syllabus, affirmed and followed.)
>
> 2. Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper. (*Kenty v. Transamerica Premium Ins. Co.* [1995], 72 Ohio St. 3d 415, 650 N.E.2d 863, affirmed and followed.)
>
> 3. In determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. (Restatement of the Law 2d, Torts [1979], Section 767, adopted.)
>
> 4. Establishment of the privilege of fair competition, as set forth in Section 768 of the Restatement, will defeat a claim of tortious interference with contract where the contract is terminable at will. (Restatement of the Law 2d, Torts [1979], Section 768, adopted.)

*Syllabus, Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171 (1999).

Bamal relies on this privilege of fair competition to defeat Counts I and II of the Complaint. In so doing, Bamal asserts without contradiction that it sought to compete with Whitesell in supplying Parts to EHP, that it did not thereby create and unlawful restraint of trade, and that its purpose in submitting price quotations to EHP was at least in part to advance its interest in competing with Whitesell.[3]

---

[3]Whitesell argues (Brief in Opposition, Doc. No. 19, at 12-13) that Bamal's actions were not intended to advance its competitive interests. However, Whitesell's pleadings and motion

However, Bamal cannot rely on the fair competition privilege to justify interference with a contract which is not terminable at will. The Supply Agreement between Whitesell and EHP is not terminable at will, at least on its face. It commits EHP to purchase is requirements of Parts exclusively from Whitesell for a definite period. During that period, EHP can purchase from another supplier of parts if, but only if, the other supplier is a "qualified supplier" as that term is definite in the Supply Agreement and Whitesell is not willing to meet the other supplier's quoted price. EHP does not have the right to terminate the Supply Agreement at will, but only to purchase outside the Agreement if certain specified conditions are met.

Secondly, Whitesell has pled conduct by Bamal which, if proven, will defeat the fair competition privilege, to wit, that the price quotations submitted by Bamal to EHP are "bogus" and "illegitimate" in a number of ways: (1) Bamal is alleged not to be a manufacturer of Parts as required by the Supply Agreement and as Bamal has represented itself to be; (2) at least some of the quotations are alleged to be for prices below cost and it is therefore unlikely that Bamal was in fact prepared to deliver those parts at the prices quoted.

Bamal relies heavily on *Kand Medical, Inc., v. Freund Medical Products, Inc.*, 963 F.2d 125 (6th Cir. 1992), but *Kand* does not support Bamal's position. The Sixth Circuit there applied Ohio law, noting its adoption of the Restatement, and distinguished between inducing the lawful termination of a contract and inducing a breach of contract. Significantly, it noted that the district court had found the distributorship contracts in question to be "exitable," presumably meaning terminable at will. The Supply Agreement is not, at least prima facie, terminable at will and Whitesell has pled, albeit on information and belief, that Bamal knew of the Supply Agreement (Complaint, Doc. No. 1, at ¶ 7).

---

papers do not suggest any other motive for Bamal's behavior except that it wanted to sell parts to EHP, either in competition with Whitesell, or by selling EHP parts which Whitesell did not produce and sell. In other words, this is competitive behavior, broadly construed.

10

To summarize, the face of the Complaint does not establish that Bamal's actions are protected by the fair competition privilege.

### Fraud

Whitesell's Third Count sounds in fraud. Bamal seeks dismissal of this Count, asserting that its "representations regarding their qualifications and ability to supply parts to EHP were expressions of opinion upon which Plaintiff had no right to rely." (Motion, Doc. No. 16, at 12.) Whitesell responds that the element of justifiable reliance in a fraud case is a question of fact which is not appropriately resolved on a motion to dismiss and in any event, Bamal's representations were of facts, not opinions. (Brief in Opposition, Doc. No. 19, at 13-14.)

The elements of an action in actual fraud in Ohio are (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 514 N.E. 2d 709 (1987), citing *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St. 3d 69, 491 N.E. 2d 1101, ¶2 of the syllabus (1986); and *Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167, 462 N.E. 2d 407 (1984).

In its Reply Memorandum, Bamal argues that the Complaint is "*NOT* based on well-pled facts; rather the allegations in Plaintiff's Complaint constitute unwarranted references [sic[4]] and unreasonable conclusions and arguments." (Doc. No. 20 at 5, emphasis sic). To a great extent, this

---

[4]The case law refers to unwarranted "inferences," which is presumably the word intended by counsel. *See Morgan v. Church's Fried Chicken, supra.*

argument is based on the requirement in Fed. R. Civ. P. 9(b) that fraud by pled with particularity. The Court declines to address that argument because it was not made at all in the Motion to Dismiss and is not properly raised for the first time in a reply memorandum. See Fed. R. Civ. P. 7(b)(1)(grounds of a motion are to be stated with particularity).

The only argument for dismissing Count III made in the Motion in chief is that Bamal's statements of its qualifications and ability to supply parts were expressions of opinion rather than statements of fact. The Court agrees that Bamal's statement "[w]e believe that our outstanding history with Springfield shows that we are the only qualified company to service EHP's facilities in the future" is a typical piece of sales puffery and not actionable. However, that is not one of the representations which Whitesell claims is fraudulent. Instead, Whitesell claims that Bamal's representations in Chris Brown's Affidavit in the Georgia Action that Bamal is "ready, willing, and able to sell the partes listed in the price quotations hereto attached as Exhibit 'A' to Electrolux Home Products, Inc. at prices contained within these quotations. Furthermore, Bamal Fastener LLC has extensive experience in manufacturing and distributing the parts listed on Exhibit 'A' and is capable of providing an uninterrupted supply of such parts to Electrolux Homes Products, Inc. for use in its manufacturing processes" are untrue representations of fact. Fairly read, these representations are not predictions about the future, but representations of present fact -- Bamal's ability to furnish these parts, its present willingness to furnish these parts, and its ability and willingness to do so at the prices set forth and the present fact that it has extensive manufacturing experience. Those are representations of fact.

Moreover, Whitesell has pled a plausible way in which it might have relied on those representations, to wit, by taking them at face value and making price and other concessions to EHP (Complaint, Doc. No. 1, at ¶ 35).

**Conclusion**

The Complaint, construed in the light most favorable to Whitesell, states claims for relief for tortious interference with contract, tortious interference with a business relationship and fraud, all under Ohio law.  The Motion to Dismiss should be denied.

July 3, 2007.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).